UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY L. OVEREND,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | **Case No. 1:14-cv-01309-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I.   INTRODUCTION

Plaintiff Nancy L. Overend ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1]

## II.   BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff was 60 years old at the alleged time of disability onset. AR 81. She has completed a GED and five months of vocational education. AR 39. Plaintiff most recently worked as an administrative assistant for Stanislaus County, a job that she had held since 1998.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 10.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

AR 222.  Plaintiff took time off from her job in 2011, underwent surgery in November 2011, and returned to work for a short time before "retiring."  AR 24, 152.  Plaintiff lives alone and has a fiancé.  AR 30.

Plaintiff's alleged physical conditions are back/neck pain, degenerative disc disease, and arthritis.  AR 194.  Plaintiff originally filed an application under Title II that was denied on September 22, 1998.[3]  AR 74.  On July 18, 2012, Plaintiff filed a second application for disability insurance benefits under Title II, now alleging a disability beginning on June 19, 2012.  AR 155-161.  This application was denied initially on November 9, 2012 and on reconsideration on June 20, 2013.  AR 88-92, 96-101.  Plaintiff filed a request for a hearing on July 17, 2013.  AR 111.  The hearing was then conducted before Administrative Law Judge Regina L. Sleater (the "ALJ") on January 14, 2014.  AR 15.  On March 5, 2014, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled.  AR 74-82.  Plaintiff filed an appeal of this decision with the Appeals Council.  The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner.  AR 1-7.

Plaintiff now challenges that decision, arguing that:  (1) The ALJ erroneously found Plaintiff's testimony not credible; and (2) the ALJ rejected the opinion of Robert McGrew, M.D., without substantial evidence, when she declined to adopt Dr. McGrew's opinion into the Plaintiff's RFC. Finally, Plaintiff argues that, to the extent the ALJ declined to adopt Dr. McGrew's opinion because it was ambiguous, the ALJ had a duty to further develop the record.

Defendant contests Plaintiff's assessment, pointing out that: (1) The problems with Plaintiff's testimony were substantial and justified discrediting her testimony; and (2) Dr. McGrew's opinion was conclusory and unsupported by evidence in the record, so the ALJ's treatment of his opinion was well-founded.  Defendant also argues that the record was sufficiently developed and the ALJ had no further duty to seek additional medical evidence.

### III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or

---

[3] The Social Security Administration was unable to locate Plaintiff's previous file, however, so the ALJ declined to apply the *Chavez* presumption of continuing non-disability.  AR 74.

she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527, 404.1529.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform her past relevant work;[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 74-82. In particular, the

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2012, the date specified in her application. AR 76. Further, the ALJ identified back, hip, and neck pain due to degenerative disc disease, arthritis lumbar microdiskectomy, and total right hip replacement as medically determinable impairments. AR 76. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 79.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform: "light work as defined in 20 CFR 404.1567(b) except she needs the allowance to change positions every 30 minutes. She cannot climb ladders, ropes, or scaffolding, should avoid concentrated exposure to hazards such as working at unprotected heights or close to dangerous moving machinery, or in extreme cold or with noxious fumes, and she can only occasionally climb ramps and stairs, or balance, stoop, kneel, crouch, or crawl." AR 79. Plaintiff was capable of performing her past relevant work as an administrative clerk. AR 81. Alternatively, Plaintiff would be capable of performing work as a credit card clerk. AR 82.

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

### V. DISCUSSION

**A. The Relevant Medical Evidence**

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as Plaintiff's own testimony, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of: (1) the opinion of Robert McGrew, M.D., a

4

treating physician; and (2) Plaintiff's testimony to the ALJ. The following review of the medical record is limited the issues of Dr. McGrew's opinion and Plaintiff's credibility.

### i. Robert McGrew, M.D.

Dr. McGrew was Plaintiff's primary care physician.  Over the course of the treating relationship, Dr. McGrew referred Plaintiff to several other physicians, including Les Konkin, M.D., and Gregory Helbig, M.D.  Plaintiff had a total hip replacement on November 9, 2011 to remedy symptoms that she had had for two years before the surgery. AR 271.  After the surgery, on May 4, 2012, she reported to Dr. Konkin that she "remained symptomatic with pain, stiffness, and a limp," although she had "some improvement" following the surgery. AR 271. Dr. Konkin noted that the range of motion of her hip was "normal" and that Plaintiff was "ambulatory with a limp." AR 271.  Dr. Konkin concluded that the "size and position of her implant is perfect" and that any "subjective complaints will be self-resolving." AR 272.

On June 19, 2012, Plaintiff saw Dr. McGrew and informed him that it was "getting harder to make it thru a day of work," although she anticipated "early retirement." AR 326-328.  Dr. McGrew observed that Plaintiff used a cane and had tenderness in her lower back, but a normal range of motion in her neck. AR 327.

On August 16, 2012, Plaintiff saw Dr. Helbig, a neurosurgeon, and told him that she had "not had significant improvement" following her hip surgery. AR 275.  She also reported significant pain in her right groin and hip. AR 275.  Plaintiff was retired at this point. AR 276. Dr. Helbig discussed the risks and benefits of further surgical options and Plaintiff decided to undergo a minimally invasive microlumbar discectomy. AR 277.  Dr. Helbig performed her surgery on August 22, 2012. AR 279.

On September 6, 2012, Plaintiff saw Dr. Helbig to follow up on the completion of her surgery. AR 343.  She reported low back pain, but had "improved right leg pain." AR 343.  She walked with a normal gait and station and had 5/5 strength throughout. AR 344.  On October 16, 2012, Dr. Helbig saw Plaintiff again. AR 379.  She reported "some improvement in the right leg pain," but still had some "residual pain." AR 379.  Dr. Helbig noted that he expected "her recovery to be fairly slow," but that she was "now 6 weeks out from surgery and now has no

5

restrictions." AR 380. On October 22, 2012, Plaintiff was seen by Debra Wilson, R.N., to request a "renewal of disability leave." AR 375. Plaintiff told Wilson that she was "unable to stand or sit for long periods of time without pain." AR 375. Wilson reported that she "extended [Plaintiff's] disability 3 more months so she can [follow up] with current issues." AR 378.

On November 27, 2012, Plaintiff saw Dr. Helbig for a follow up appointment. AR 371. She reported "minor improvement of her symptoms," but continued "right hip flexor weakness." AR 371. Dr. Helbig concluded that it was "still early in [Plaintiff's] recovery and it may take up to a year to see her full recovery potential." AR 372. He also recommended Plaintiff seek a second opinion. AR 372.

On December 12, 2012, Plaintiff sought such an opinion from Jonathan Cohen, M.D. AR 354. Plaintiff told Dr. Cohen that she had pain in her right hip and low back pain and that she was "trying to get Social Security payments." AR 354. Dr. Cohen observed that her hips were tender to palpation. AR 354. Her right hip flexion, extension, active adduction, active internal rotation, and active external rotation were all normal. AR 354-355. The abduction strength of her hips was "reduced." AR 355. Dr. Cohen determined that Plaintiff had "no sign of infection or problem" and should receive radiographs every 3-5 years. AR 355.

On March 7, 2013, Plaintiff reported to Dr. McGrew that she was still experiencing back pain. AR 360. She also reported new pain in her right shoulder. AR 360. She denied any neck pain or muscle weakness and did not appear to be in any acute distress. AR 361. Dr. McGrew gave her a number of range of motion stretching exercises and prescribed nabumetone. AR 361. On March 12, 2013, Dr. Helbig examined Plaintiff in response to her complaints of shoulder pain. AR 357. Dr. Helbig was "concerned that her symptoms may be due to adjacent level spinal cord compression" and ordered an MRI. AR 358. Plaintiff underwent an MRI on March 16, 2013. AR 396-397.

On April 2, 2013, Dr. Helbig examined Plaintiff and reviewed the results of the MRI. AR 393. He rated her muscle strength as 5/5 throughout and determined that the MRI did not show any spinal compression. AR 394. Dr. Helbig recommended that Plaintiff seek physical therapy, but reported that "[s]he does not want to do therapy and she says she will deal with the pain." AR

394.

On August 13, 2013, Plaintiff saw Dr. McGrew to ask him to fill out a "form [for] disability."[6] AR 435. Plaintiff told Dr. McGrew that she was "permanently disabled" and that she had "frequent difficulty turning [her] head," which impaired her ability to engage in tasks such as "keyboarding." AR 435. She also complained of "low back pain which radiates into her hips and legs," which "impairs her ability to sit and work." AR 435. She also complained that she needed to take drugs to manage her pain and allow her to perform "household chores." AR 435. The drugs, she claimed, affected her ability to concentrate. AR 435. She also complained that even simple tasks, such as "lifting a gallon of milk or doing laundry" tended to exacerbate her back pain. AR 435. She told Dr. McGrew that she had been disabled to this extent since June 1, 2011. AR 435. Dr. McGrew conducted a physical examination and found her neck and back were tender to palpation. AR 438. Plaintiff had limited extension and mildly limited flexion in her cervical spine. AR 438. She also showed reduced grip strength in her right and left upper extremities and reduced sensation to touch on her right thigh. AR 438. Plaintiff walked with a cane. AR 438. Dr. McGrew concluded that Plaintiff "appears to deserve long term disability based on the above issues." AR 439.

The ALJ gave no weight to Dr. McGrew's opinion. AR 80.

### ii. Sadda Reddy, M.D.

Dr. Reddy, a reviewing physician, reviewed Plaintiff's records on June 20, 2013. AR 56-69. After reviewing all the records received by that date, Dr. Reddy concluded that there was no evidence "to indicate any cervical spine surgery is being considered." AR 63. Even if such surgery occurred, Dr. Reddy believed that "recovery from that would not last 12 months." AR 63. Dr. Reddy noted that Plaintiff did not have any "motor weakness" and that her strength was 5/5 in Dr. McGrew's notes. AR 63. Dr. Reddy determined that an RFC of light work with postural limitations would be appropriate. AR 67. Specifically, Dr. Reddy found that Plaintiff would be capable of performing her past relevant work. AR 68. The ALJ did not explicitly

---

[6] It is unclear whether this refers to the present application for Social Security benefits or some other state or private insurance program (as Plaintiff appears to have received in the past).

weigh Dr. Reddy's opinion, but adopted the RFC with some additional limitations. AR 80.

### B. The ALJ's Treatment of Dr. McGrew's Opinion

#### i. Legal standards

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

///

*ii. Analysis*

Dr. McGrew's conclusion that Plaintiff "appears to deserve long-term disability" (and, implicitly, that she is unable to work) is contradicted by the opinion of reviewing physician Dr. Reddy. The ALJ must thus provide specific and legitimate reasons supported by substantial evidence to reject any of Dr. McGrew's findings. *Lester*, 81 F.3d at 830-31. In her decision, the ALJ wrote of Dr. McGrew's opinion:

> The record does not include a more restrictive RFC. Although on August 13, 2013, when the claimant requested that her physician fill out a disability form, Dr. McGrew's treatment notes mentions "patient appears to deserve long-term disability," there was no such form submitted in this case. Further Dr. McGrew did not specify what exactly he meant by the phrase "long-term disability" or even if he was referring to the requirements of the Social Security Act. For these reasons, this vague conclusion is accorded no weight.

AR 80 (internal citations omitted).

The regulations governing the consideration of medical opinions carve out opinions on a subset of topics as reserved to the Commissioner's discretion. A statement offered by a physician that a plaintiff is "disabled" or "unable to work," for example, is not entitled to "any special significance" because it constitutes an "opinion on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(1), (3). An ALJ must consider, however, opinions on other topics. Medical opinions in the record, for example, "that reflect judgment about the nature and severity of [plaintiff's] impairments, including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions," must be considered. 20 C.F.R. § 404.1527(a)(2), (b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"). Dr. McGrew's treatment notes from August 13, 2013 contained statements on both: (1) a topic reserved to the discretion of the ALJ (*i.e.*, whether Plaintiff "deserved long-term disability"); and (2) a topic that reflected what Plaintiff could do despite her impairments and her physical restrictions (*i.e.*, her ability to sit for more than 15 minutes at a time, to type, and to concentrate).

Thus, while it was appropriate for the ALJ to disregard Dr. McGrew's conclusion that Plaintiff "deserved long-term disability," the ALJ was still required to provide specific and

legitimate reasons supported by substantial evidence to reject Dr. McGrew's statements about Plaintiff's specific functional limitations.[7] The ALJ's decision does not appear to do so. Indeed, the decision only discounts one part of Dr. McGrew's statement and does not discuss reasons—specific, legitimate, or otherwise—for rejecting Dr. McGrew's other statements about Plaintiff's functional limitations.[8]

The Commissioner contends that the ALJ rejected Dr. McGrew's opinion because it was "brief, conclusory, and inadequately supported by clinical evidence." (Defendant's Responsive Brief 7:25, ECF No. 21.) Such a rationale would constitute an adequate reason to reject a treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion"). But there is little to suggest that the ALJ's decision actually rests on this basis. Indeed, the discussion of Dr. McGrew's opinion (excerpted above) contains no reference to any other evidence in the record, supportive or not. Nor, as explained above, does it discuss reasons for rejecting the limitations described in the notes attached to the rejected conclusion. *Burrell v. Colvin*, 775 F.3d 1133, 1140 9th Cir. 2014) (ALJ erred by rejecting treating physician opinion as conclusory where opinion was "consistent . . . with Dr. Riley's own extensive treatment notes which, as discussed above, the ALJ largely overlooked"). The Court is constrained to consider only the reasons the ALJ puts forth in her decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Thus, while there may be a case to be made that Dr. McGrew's opinion of Plaintiff's functional limitations is not supported by the record, the ALJ does not make it.

Similarly, the Commissioner's argument that Dr. Reddy's opinion constitutes substantial evidence to reject Dr. McGrew's opinion is unpersuasive because the ALJ makes no reference to rejecting Dr. McGrew's opinion on the basis that it was contradicted by Dr. Reddy's opinion. In fact, the ALJ seems to wholly ignore Dr. McGrew's discussion of Plaintiff's functional

---

[7] The ALJ rejected Dr. McGrew's statements in his notes that Plaintiff was unable to sit for more than 15 minutes, for instance, when she adopted an RFC that required postural changes every 30 minutes.

[8] This is not to say that there are no specific, legitimate reasons to reject Dr. McGrew's opinion. It is only to say that no such reasons are expressed in the ALJ's decision. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("we 'are constrained to review the reasons the ALJ asserts'").

limitations after discussing Dr. Reddy's RFC. AR 80 (aside from the RFC proposed by the reviewing physicians, "[t]he record does not include a more restrictive RFC"). Nor does the ALJ appear to have included a discussion of Dr. Reddy's opinion in the decision, leaving the Commissioner to piece a rationale together after the fact. The omission of specific and legitimate reasons to reject Dr. McGrew's opinion constitutes error on the part of the ALJ.

The ALJ did not, however, inappropriately base her decision on her own "lay interpretation" of the evidence. (Plaintiff's Opening Brief 10:16-20, ECF No. 18.) The ALJ's determination that Plaintiff's "normal neurovascular function signs, and full motor strength and range of motion in the hip" meant that she would be able to stand and walk for up to 6 hours is adequately supported by the medical evidence in the record as summarized by the ALJ. AR 78 ("Jonathan Cohen, M.D. reported the claimant's neurovascular function to be normal, and her range of motion to be normal"), 80. It is well within the ALJ's prerogative to translate the medical evidence into an RFC. 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity").

### C. The ALJ's Duty to Develop the Record

An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Id*. Once the duty is triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Such an inquiry need not be all-encompassing, however. An ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The standard is one of reasonable good judgment"). Indeed, an ALJ is only required to conduct further inquiries with a treating or

consulting physician "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010). The duty to develop the record is typically triggered where, for example, a claimant's medical records are incomplete or there is an "issue sought to be developed which, on its face, must be substantial." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

The duty to develop the record was triggered here. Dr. McGrew's notes from August 13, 2013 indicate that Plaintiff asked for his assistance in filling out some kind of disability form. AR 435. As the ALJ notes in her decision, however, "there was no such form submitted in this case." AR 80. Such a form may have shed light on the context of Dr. McGrew's opinion that Plaintiff "appears to deserve long-term disability," a conclusion that the ALJ rejected because "Dr. McGrew did not specify what exactly he meant . . . or even if he was referring to the requirements of the Social Security Act." AR 80. Given this ambiguity, it would be appropriate for the ALJ to determine whether the suggested disability form exists and to examine whether its contents can clarify Dr. McGrew's opinion.[9]

Defendant contends that the ALJ has already made adequate efforts to contact Dr. McGrew. (Defendant's Responsive Brief 10:2-6, ECF No. 21, *citing Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination").) But the ALJ's decision does, in fact, indicate that Dr. McGrew's notes are ambiguous. AR 80 ("Dr. McGrew did not specify what exactly he meant . . . or even if he was referring to the requirements of the Social Security Act"). And the efforts in the record to seek additional documentation from Dr. McGrew appear to have been served before August 13, 2013—in other words, prior to Dr. McGrew writing the notes offering the "vague" or ambiguous conclusion that Plaintiff should be entitled to disability benefits. AR 78, 398-399 (mailed May 7, 2013), 404-405

---

[9] There is, of course, the possibility that the form may cut against Plaintiff's case or may be found inapplicable to the analysis in this case. As the ALJ indicated, Dr. McGrew's notes and conclusions may not even be for a claim under the Social Security Act (Plaintiff appears to have applied for disability leave benefits from either the state of California or a private insurance program elsewhere in the record). 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled or blind is not binding on us"). In any case, further inquiry into this matter may explain the context of Dr. McGrew's opinion.

(mailed May 28, 2013), 412-414 (mailed June 11, 2013).  While the Court is sympathetic to the Commissioner's multiple efforts to seek medical documentation from Dr. McGrew, the ALJ's duty to develop the record suggests that at least some further attempt to clarify the August 13, 2013 treatment notes should be made.

### D. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate

#### *i. Legal standards*

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (emphasis added).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence.  *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical

13

observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### *ii. Analysis*

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 80-81. She questioned, however, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms." AR 81. In particular, the ALJ questioned Plaintiff's statements about the severity of her back, neck, and hip pain; that her pain was not improved by surgery; that she could not stand for more than 15 minutes; and that she could not lift more than 10 pounds. AR 80. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

The ALJ offers a lengthy discussion of her consideration of Plaintiff's testimony. Among other reasons, she offers several justifications for finding Plaintiff not credible: (1) No objective medical evidence supported Plaintiff's alleged restrictions; (2) Plaintiff failed to seek treatment consistent with the severity of her alleged symptoms; (3) Plaintiff failed to follow prescribed treatment intended to relieve her symptoms; (4) Plaintiff did not appear motivated to work based on her "retirement"; and (5) Plaintiff's daily activities are inconsistent with the severity of her allegations. AR 80. The Court will consider each of these reasons in turn.

The lack of objective medical evidence to support a plaintiff's allegations can constitute a "factor that the ALJ can consider in [her] credibility analysis," although it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In particular, the ALJ noted that Plaintiff had "full (5/5) motor strength shown in all four extremities on March 12, 2013 examination [sic]" and treated this finding as contradicting Plaintiff's claims about the severity of her standing and lifting restrictions. AR 80. This finding is supported by the record; Dr. Helbig did, in fact, find that Plaintiff had full motor strength on March 12, 2013. AR 358.

14

The failure to seek treatment or follow prescribed treatment is also a valid reason to doubt a Plaintiff's credibility. *Tommasetti*, 533 F.3d at 1039 (permissible to discount credibility where claimant "did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"). On April 2, 2013, Dr. Helbig expressly recommended that Plaintiff seek physical therapy. AR 394. She declined, however, saying that "she will deal with the pain." AR 394. Moreover, as the ALJ points out, Plaintiff only sought medical attention on two occasions after March 2013—and one of those occasions was merely to get a disability form filled out. AR 80. These facts suggest that Plaintiff's symptoms are not as debilitating as she asserts. Notably, Plaintiff does not challenge this portion of the credibility finding in her briefing. This rationale, particularly when taken in conjunction with the lack of objective medical evidence supporting her testimony, is adequate to justify the ALJ's credibility findings.

The ALJ's inference that Plaintiff was unmotivated to work was also a permissible inference to draw from the evidence. *Tommasetti*, 533 F.3d at 1040 (noting that "we cannot say that the ALJ's inference regarding Tommasetti's motivation to work based on this savings was unreasonable" in finding claimant not credible). The ALJ indicated that the severity of Plaintiff's alleged symptoms appears to increase when she is specifically requesting disability leave benefits (AR 375, 435), but decreases when she is merely seeking medical treatment (AR 343, 372, 380). AR 80. The inference that Plaintiff is exaggerating her symptoms to avoid work is thus a reasonable inference to draw. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("the law judge is entitled to draw inferences logically flowing from the evidence"). It also undercuts Plaintiff's claim that she is motivated to return to work or would do so but for her alleged disability.

A plaintiff's daily activities can also be a valid reason for an ALJ to doubt a Plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

15

testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ found that Plaintiff could engage in "relatively normal activities of daily living and social functioning." AR 80. For example, Plaintiff reported "going out to eat with her fiancé more often than actually cooking dinner." AR 80. She also cares for pets, has no difficulties with personal care activities, can do the laundry and dishes, and can shop for groceries. AR 212-214. Plaintiff argues that these activities are only "sporadic" and "occasional," but this contention is at odds with the statements Plaintiff makes in her disability report, indicating that these activities are performed on a weekly basis. *Id.* In any case, the ALJ could reasonably have come to the conclusion that Plaintiff's daily activities are not consistent with a totally debilitating impairment. Taken in conjunction with the above-mentioned problems with Plaintiff's testimony, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence to disbelieve Plaintiff's allegations of her symptoms.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record or free of clear legal error. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is REMANDED to the Social Security Administration. On remand, the Social Security Administration shall make an attempt to develop the record with respect to Dr. McGrew's August 13, 2013 treatment notes and review the record to determine if there are specific and legitimate reasons that are supported by substantial evidence to reject Dr. McGrew's opinion regarding Plaintiff's functional limitations. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Nancy L. Overend and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 5, 2016**            /s/ Erica P. Grosjean
                                                          UNITED STATES MAGISTRATE JUDGE